## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | **:** | |
| **UNITED STATES OF AMERICA** | **:** | **Case No: 21-CR-0079-BAH** |
| | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| | **:** | |
| **KEVIN JAMES LYONS,** | **:** | |
| *Defendant.* | **:** | |

### STATEMENT OF FACTS FOR STIPULATED TRIAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Kevin Lyons, with the concurrence of his attorney, hereby submit the elements and statement of facts for stipulated trial in this action.

**I.      Elements**

   ***A.   Count One: Entering and Remaining in a Restricted Building or Grounds.***

The essential elements of the offense of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), each of which the government must prove the following beyond a reasonable doubt, are as follows:

   1.   The defendant entered or remained in a restricted building or grounds without lawful authority to do so; and,

   2.   That the defendant did so knowingly.

**B.  Count Two: Disorderly and Disruptive Conduct in a Restricted Building or Grounds.**

The essential elements of the disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2), each of which the government must prove the following beyond a reasonable doubt, are as follows:

1.  That the defendant engaged in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds;

2.  That such conduct occurred when, or so that, such conduct, in fact, impeded or disrupted the orderly conduct of Government business or official functions; and

3.  That the defendant did so knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions.

**C.  Count Three: Entering and Remaining in Certain Rooms in the Capitol Building.**

The essential elements of the offense of entering and remaining in certain rooms in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C), each of which the government must prove the following beyond a reasonable doubt, are as follows:

1.  That the defendant entered or remained in a room set aside or designated for the use of a Member of Congress; and

2.  The defendant did so knowingly, and with intent to disrupt the orderly conduct of official business.

**D.  Count Four: Disorderly Conduct in a Capitol Building or Grounds.**

The essential elements of the offense of disorderly conduct in the Capitol or grounds thereof in violation of 40 U.S.C. § 5104(e)(2)(D), each of which the government must prove the following beyond a reasonable doubt, are as follows:

1.  The defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;

2.  The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and

2

3.   The defendant acted willfully and knowingly.

### E.  Count Five: Parading, Demonstrating, or Picketing in a Capitol Building.

The essential elements of the offense of parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G), each of which the government must prove beyond a reasonable doubt, are as follows:

1.   The defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings; and

2.   The defendant acted willfully and knowingly.

### F.  Count Six: Obstruction of an Official Proceeding

The essential elements of the offense of obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), each of which the government must prove the following beyond a reasonable doubt, are as follows:

1.   The defendant attempted to or did obstruct or impede an official proceeding;

2.   The defendant intended to obstruct or impede the official proceeding;

3.   The defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and

4.   The defendant acted corruptly.

## II.   Statement of Offense.

### A.  The Attack at the U.S. Capitol on January 6, 2021.

1.       The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police ("USCP"). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session is set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18 and requires a deliberate and legally prescribed assessment of ballots, lists, certificates, and, potentially, written objections. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5.      At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to

security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 p.m., members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

**B. Defendant Kevin Lyons's Participation in the January 6, 2021, Capitol Riot.**

8.      On January 5, 2021, Defendant Kevin Lyons (Lyons) posted on his Instagram account (Chi_hvac) a map showing directions from his hometown in Illinois to Washington, D.C.,

(Figure 1) commenting that "I refuse to tell my children that I sat back did nothing.  I'm heading to DC to STOP THE STEAL!"



*Figure 1*

9.      Lyons traveled to Washington D.C. thereafter on or about January 5, 2021, from Illinois in his car.

10.     On January 6, 2021, Lyons attended a rally hosted by then President Donald Trump near the White House.

11.     Lyons joined others and walked to the U.S. Capitol.  Lyons recorded his actions throughout the day on his cellular telephone and texted updates to others not present.

12.     As Lyons walked to the U.S. Capitol, he heard flash bangs and saw individuals walking away from the U.S. Capitol toward him.  Lyons texted, "We're marching to the Capitol. We're getting gassed."  As he neared the U.S. Capitol grounds, Lyons saw individuals climbing up the scaffolding and walls.

13.     Once on the U.S. Capitol grounds, Lyons gathered with many other rioters and encountered tear gas and flash bangs.  Lyons did not leave the grounds.  He twice chanted, "Who's house? Our house!"  He commented, "I love the smell of teargas in the mid-afternoon."  He also stated his intentions, "We're storming the Capitol building," and that he knew the wrongfulness of his actions, commenting, "I guess we're all going to jail."  Lyons further yelled five times, "Who's House?" to which the crowd responded, "Our House!"  Lyons then yelled, "Let's take it!" before heading up the staircase toward the Senate Wing doors.

14.     While climbing the stairs, Lyons commented, "This is our house and we're taking our house back." He further stated, "This is a fucking revolution."

15.     Once on the terrace, Lyons saw broken bike racks and security fences knocked down on the ground.  He witnessed rioters yell comments at law enforcement.  Lyons yelled the following comments at law enforcement as he walked to the Senate Wing doors: "Oath breakers!" "Fucking Nazi bastards!" "Traitors!" and "SS!"

16.     Lyons entered the U.S. Capitol through the Senate Wing doors on the first floor around 2:16 pm, yelling, "Who's house?"  As he entered, Lyons yelled, "USA!" and "I seek an audience with my representative."  As Lyons walked down the hallway toward the Crypt, Lyons twice shouted, "Who's house?"  No one answered.  Lyons then yelled, "We go where we want in our house."

17.     Lyons further shouted, "Nancy, where are you?" joining others calling for the Speaker of the House Nancy Pelosi.

18.     Lyons continued in the hallways, shouting, "Stop the Steal!" and responding, "Our house" when someone yells, "Who's house?" A man in the crowd around Lyons shouted, "Let's shut down the whole government."  "We just shut down Congress. They recessed."

19.     Lyons also made his way up to the second floor, where he entered Speaker of the House Nancy Pelosi's Office.

20.     Prior to doing so, Lyons called out, "Nancy!"  He also took a photograph of the plaque outside of her office and posted the photograph to his Instagram account, commenting "WHO'S HOUSE?!?!? OUR HOUSE!"  (Figure 2).  Lyons removed this post after about one hour.



*Figure 2*

21.     Inside the Speaker's office, Lyons filmed as he walked around the office and he recorded an image of himself reflected in a mirror (Figure 3).



*Figure 3*

22.      Lyons saw a news broadcast from MSNBC on a television screen with a headline, "6PM ET Curfew issued for Washington DC as Protestors Storm Capitol."  Lyons commented, "Is that us?" followed by, "I'm not leaving my house."  He approached a grey, wool coat hanging from a coat rack, and offered it to others, saying, "Anyone need a coat?"  Lyons then reached into the coat and removed a brown, leather wallet from an inner pocket (Figures 4 and 5).  Lyons put the wallet inside his hooded zip-up pocket.  The wallet contained about $50 in cash, a TSA precheck identification card, two bank cards, and a driver's license of the wallet's owner, N.H. Lyons did not return the wallet or its contents to N.H.




*Figure 4*



*Figure 5*

23.     Lyons then entered the Speaker's personal office and removed a framed photograph of the Speaker of the House with Former Representative John Lewis.  The framed photograph was personal property belonging to the Speaker of the House.  Lyons took the framed photograph and wallet with him out of the U.S. Capitol.  He texted a picture of the photograph, stating he was now a felon and "I took this off Pelosi's fucking desk!"  After leaving the Capitol in an Uber, Lyons posed for a photo in which he held up the framed photograph that he had taken from Speaker Pelosi's office (Figure 6).



*Figure 6*

24.     Lyons knew at the time he entered the U.S. Capitol Building that he did not have permission to enter the building.  Lyons obstructed, influenced, and impeded an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

Without waiving any arguments in defendant's motion to dismiss count 6, ECF No. 64, the parties agree that if the Court finds the existence of these facts beyond a reasonable doubt, the defendant stipulates that this evidence would establish each and every element of the charged

offenses for Counts 1 through 6 of the superseding indictment, ECF No. 23, without waiving objection to the Court's ruling on the motion to dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/ *Sean P. McCauley*
SEAN P. McCAULEY
Assistant United States Attorney
New York Bar No. 5600523
United States Attorney's Office
For the District of Columbia
601 D Street NW
Washington, DC 20530
Sean.McCauley@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Kevin Lyons, have read this statement of facts for stipulated trial and have discussed it with my attorney. I fully understand the elements and the facts that are set forth. I agree and acknowledge by my signature that this statement of facts for stipulated trial is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this statement of facts for stipulated trial fully.

Date: 12-13-2022

KEVIN LYONS
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this statement of facts for stipulated trial and have reviewed it with my client fully. I concur in my client's desire to adopt this statement of facts for stipulated trial as true and accurate.

Date: 12/13/2022

LAWRENCE WOLF LEVIN
Attorney for Kevin Lyons

12