IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs. )<br>)<br>KEVIN JAMES LYONS )<br>)<br>Petitioner-Defendant ) | Cr. No. 21-00079 (BAH) |

**REPLY IN SUPPORT OF PETITIONER-DEFENDANT'S MOTION FOR RELEASE**

  Mr. Lyons, through undersigned counsel, respectfully submits this reply to the government's opposition (ECF:113) to his pro se motion for release pending appeal (ECF:100), supplemented and restyled by counsel as a motion for release pending the resolution of his § 2255 motion to vacate (ECF:110). In support of his motion for release and in response to the government's opposition, Mr. Lyons states as follows:

  1.  The government's statement at the very outset of its opposition — that "[t]he defendant claims that, but for ineffective assistance of counsel, he would have an appeal pending and the Court should treat his case accordingly and that, based on his hypothetical appeal, that he meets the criteria under 18 U.S.C. § 3143(b)(1) for release" (ECF:113 at 1) — is wrong. Mr. Lyons' supplemental motion makes clear that he — like defendant Jorge Riley in Case No. 21-cr-69 (D.D.C.) — is moving for release pending the resolution of his § 2255 motion to vacate, which courts have the "inherent power" to grant where the movant makes "'a showing of exceptional circumstances . . . for such relief, or a demonstration of a clear case on the merits of the habeas petition.'" (ECF:110 at 6-7 (quoting *Plaff v. Wells*, 648 F.2d 689, 693 (10th Cir. 1981)); *see also* ECF:110 at 6 (citing cases for proposition that "the movant must show that his motion is based on a substantial question of law and that it is based on exceptional circumstances").) Conceding that the standards are not identical, Mr. Lyons nevertheless

addressed the standard for release under § 3143(b)(1), "in light of courts' focus [in both contexts] on a 'substantial question of law' and/or the merits of the habeas petition and the more clearly delineated criteria for motions for release pending appeal under § 3143(b)(1)." (ECF:110 at 7.) It is difficult to believe that this Court would release Mr. Lyons pending the resolution of his § 2255 if he had not addressed the remaining criteria of § 3143 beyond the "substantial question" requirement common to both contexts: risk of flight, risk of danger to a person or the community, for the purpose of delay, and the consequences of a potential legal ruling in his favor.

  2. More significantly, the government fundamentally misreads Mr. Lyons' supplemental motion to vacate. The government repeatedly asserts — in the excerpt above and elsewhere in its opposition — that Mr. Lyons' motion for release is based exclusively on a claim of ineffective assistance of counsel (also "IAC"). For example, after acknowledging that it has "generally assumed" that *Fischer* "might pose a substantial question of law,"[1] the government states: "however, *Fischer* and *Brock* are irrelevant because [Mr. Lyons'] motion for release is brought pursuant to the § 2255 motion, which argues that defendant was denied effective assistance of counsel." (ECF:113 at 4; *see also, e.g., id.* ("The question the defendant's petition currently presents is whether the defendant's attorney was ineffective based on his failure to file a notice of appeal."); *id.* at 6 ("[R]eleasing the defendant at this time based on prior counsel's alleged failure to file a timely notice of appeal would be inappropriate as it does not call into question the original finding of guilt or the sentence imposed by the Court.") The government is once again incorrect. Mr. Lyons' failure-to-file ineffectiveness claim is only one of *several*

---

[1] In full the government states: "The government, for purposes of releases pending appeal, has generally assumed without conceding, that *Fischer* might pose a substantial question of law." (ECF:113 at 4). Courts in this district have universally so held.

2

substantial questions that warrant his immediate release pending the resolution of his § 2255 motion to vacate. While Mr. Lyons' pro se motion and supplements *do* state claims of ineffective assistance of counsel, he also states direct claims for relief under *Fischer*, *Brock*, and *Griffin*. Indeed, Mr. Lyons stated these claims in separate **bolded** section headings under the "Grounds for Relief" section of his supplemental motion. (*See* ECF:108 at 7 ("**I. Invalidity/ Inapplicability of 18 U.S.C. § 1512**"); ECF:108 at 8 ("**II. Inapplicability/ Misapplication of the 'Administration of Justice' Sentencing Guidelines Enhancements: U.S.S.G. §§ 2J1.2(b)(1)(B) and 2J1.2(b)(2)**"); ECF:108 at 9 ("**III. Ineffective Assistance of Counsel**"); *see also* ECF:109 at 1 (one-page supplement adding "as grounds for relief all claims relating to the issues currently on appeal in *United States v. Griffin*, No. 22-3042, argued December 4, 2023, which could affect Mr. Lyons' convictions under 18 U.S.C. § 1752(a)(1) and (a)(2)"; and "further add[ing]" *Griffin*-related claims "to [Mr. Lyons'] ineffectiveness claims").[2] He also highlighted them as independent bases for relief in his supplemental motion for release. (*See* ECF:110 at 1, 9, 10-11, 12.)

The government's confusion here is especially perplexing, as the *very same day* it filed its opposition to Mr. Lyons' motion for release, it also filed a Motion for an Order Confirming Limited Waiver of the Attorney Client Privilege (ECF:111) and Request for Extension of Time

---

[2] Mr. Lyons notes that *Griffin* is still pending in the D.C. Circuit (No. 22-3042, argued December 4, 2023) and may or may not — depending on the Circuit's decision and any subsequent appeal to the United States Supreme Court — ultimately provide a basis to vacate Mr. Lyons' § 1752 convictions. Counsel was waiting for *Griffin* to be decided before including it in Mr. Lyons' supplemental filings, but as Mr. Lyons' one-year statutory filing deadline approached without a decision in *Griffin*, counsel felt it necessary to file the July 22nd supplement to preserve Mr. Lyons' claims. There was no malicious intent behind counsel's July 22nd filing, and counsel apologizes for any inconvenience this may have caused the Court or the government (who is the opposing party in *Griffin* and is presumably aware of its potential effect on § 1752 convictions moving forward).

to File (ECF:112), wherein it expressly acknowledged Mr. Lyons' direct (and separate) § 2255 claims under *Fischer* and *Brock*. (*See* ECF:111 at 2 (listing Mr. Lyons' direct *Fischer* and *Brock* claims and describing them as "additional claims" for relief); ECF:112 at 2-3 (requesting additional time to respond to Mr. Lyons' § 2255 motion as it has "significantly expanded" to include "at least four separate grounds for relief rather than the single ground for relief in his original motion," including Mr. Lyons' "new claim[] *regarding his conviction* under *Fischer*" and "another new claim under" *Brock* (emphasis added)).).[3] It thus appears that the government is very much aware of Mr. Lyons' additional claims — i.e., there was not in fact misreading or confusion — the government simply chose not to respond to them, likely because there is no response that would support its decision to oppose Mr. Lyons' motion for release.

3. Relatedly, the government also chose not to respond to its position or the district court's release order in the *Jorge Riley* case, which Mr. Lyons included as a separate bolded subsection within the substantial question/exceptional circumstances section of his supplemental motion for release. (*See* ECF:110 at 10 (discussion set apart under heading, **United States v. Jorge Riley, No. 21-cr-69-APM (D.D.C.)**).) The government's opposition not only makes no attempt to distinguish *Riley* (because it cannot, at least to its benefit), but it does not even acknowledge *Riley* or the position it took in that case, as it is fundamentally at odds with the positon it takes here.[4] Similar to Mr. Lyons, Mr. Riley moved for release pending the resolution of his § 2255 motion to vacate, which stated two grounds for relief: *Fischer* and *Brock*. (*See* ECF:110 at 10-11 (discussing legal differences between Mr. Riley and Mr. Lyons' cases/

---

[3] In both filings, the government neglected to include Mr. Lyons' direct claim under *Griffin*, as well as several of Mr. Lyons' additional IAC claims.

[4] *Cf.* ABA Model Rule of Professional Conduct 3.3(a)(2) (requiring lawyers to cite authority that is directly adverse to the position the lawyer's client is taking).

motions, all of which inure to the benefit of Mr. Lyons).)  The government "d[id] not oppose the relief sought in [Mr. Riley]'s motion for release pending resolution of his motion to vacate his sentence pursuant to 28 U.S.C. § 2255, namely, that he be released from custody subject to the same conditions of release in effect at the time of his surrender."  *See United States v. Riley*, 21-cr-69-APM (D.D.C.), ECF:73 at 2-3.  While the government went to great pains in *Riley* to stress that its position with respect to release was not meant to concede the merits of any of the substantive arguments in Mr. Riley's motion to vacate, by not opposing his release, the government did concede that the legal standard for release was met.  The court granted Mr. Riley's motion for release the next day and ordered that he "shall immediately commence his term of supervised release."[5]  *See id.*, ECF:74 at 1.

Because the government in *Riley* conceded that two of the *precise* legal issues presented in Mr. Lyons' § 2255 petition meet the standard for release pending the resolution of such motions, it should be foreclosed from taking the opposite position here.

4.      In addition to the *Jorge Riley* case, the government's post-*Fischer* behavior in § 1512 prosecutions pending trial is also relevant here.  Despite reporting that it is still awaiting guidance from the Solicitor General's Office, the government has begun voluntarily dismissing § 1512 charges (or expressing its intent to do so) in pretrial cases (and at least one post-trial case) indicted before the Supreme Court decided *Fischer*.  *See, e.g.*, *United States v. Lee*, No. 21-cr-303-ABJ (D.D.C.), ECF:131 (Aug. 2, 2024) (government motion to dismiss § 1512 count); *United States v. Giobbie*, No. 24-cr-304-CJN (D.D.C.), ECF:21 (Aug. 1, 2024) (same); *United States v. Gossjankowski*, No. 21-cr-123-PLF (D.D.C.) ECF:227 (Aug. 2, 2024) (same); *United*

---

[5]  Should the Court grant Mr. Lyons' motion, he respectfully requests that the Court's release order contain this same language.

*States v. Groseclose*, No. 21-cr-311-CRC, ECF:110 (Aug. 2, 2024) (government motion to dismiss § 1512 count *after* conviction but before sentencing); *United States v. Jackman, et al.*, No. 21-cr-378-TJK (D.D.C.), ECF:192 at 2 (July 15, 2024) (government stating intent to dismiss § 1512 count); *United States v. Norwood III*, No. 21-cr-233-CJN (D.D.C.), ECF:88 (July 25, 2024) (government superseding its original indictment by, *inter alia*, removing § 1512 charge); *United States v. Trevor Cain*, No. 23-cr-297-RC (per defense counsel, defendant pleading to two misdemeanors and no § 1512, where charged pre-*Fischer* with § 1512 and four misdemeanors). In most of the cited cases, trials were not set to occur until September, so the government could have held onto the § 1512 charges, at least temporarily, if it believed them to be valid. The government's post-*Fischer* dismissal of pending § 1512 charges should be considered as yet another concession that — at the very least — *Fischer* presents a substantial and exceptional enough question warranting release pending the consideration of Mr. Lyons' motion to vacate.

5.   As stated in his supplemental motion for release (ECF:110 at 12), given Mr. Lyons' August 29, 2023 BOP reporting date and the fact that Mr. Lyons has been earning First Step Act Time Credits under 28 CFR § 523.41 while incarcerated, even were his 12-month (concurrent) statutory-maximum misdemeanor sentences ultimately upheld,[6] he would likely be eligible for immediate release were his § 1512 conviction vacated *or* were he resentenced to a within Guidelines sentence under *Brock*. Undersigned counsel has since obtained Mr. Lyons' BOP Sentence Computation Report, which confirms that Mr. Lyons has earned 120 days of First Step Act credits to date. *See* BOP Sentence Computation Report (attached as Ex. A). Mr. Lyons

---

[6] In contrast to the government's assertion that Mr. Lyons "is not contesting his conviction" on the Class-A misdemeanors (ECF: 113 at 6), Mr. Lyons' § 2255 motion does challenges his 18 U.S.C. § 1752(a)(1) and (a)(2) convictions and sentences based on the arguments raised in *United States v. Griffin*, No. 22-3042 (D.C. Cir.). (ECF:109 at 1.)

is thus immediately eligible for release, as his 12-month sentences would be discounted by the 120 days of First Step Act credits.

The government suggests that even were the *Fischer* and *Brock* errors ultimately corrected, the Court would have discretion to stack Mr. Lyons' misdemeanor sentences upon resentencing. (ECF:113 at 8.) But as this Court has repeatedly recognized:

> While possible, imposing consecutive sentences on the four misdemeanors, as the government proposes, would be a departure from both default practice under federal law, *see* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively."), and the position advanced by the government and adopted by this Court at defendant's sentencing in the instant case, where the government did not seek consecutive terms of imprisonment, . . . resulting in an order to concurrent terms of imprisonment on all Counts[.]

*United States v. Bledsoe*, No. 21-cr-204-BAH, 2024 WL 341159, at *5 (D.D.C. Jan. 20, 2024); *accord United States v. Herrera*, No. 21-cr-619-BAH, 2024 WL 1655204, at *6 (D.D.C. Apr. 17, 2024); *United States v. Roche*, No. 22-cr-86-BAH, 2024 WL 1328459, at *5 (D.D.C. Mar. 28, 2024); *United States v. Williams*, No. 21-cr-377-BAH, 2024 WL 1253949, at *5 (D.D.C. Mar. 25, 2024); *United States v. Bender*, No. 21-cr-508-BAH, 2024 WL 960999, at *5 (D.D.C. Mar. 6, 2024); *see also* U.S.S.G. § 5G1.2.

Moreover, at a resentencing, the Court would be empowered to consider "evidence of a defendant's rehabilitation since his prior sentencing and that such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range." *Pepper v. United States*, 562 U.S. 476, 490 (2011). In addition to post-sentencing rehabilitation, the Court would also be able to consider the letters and potential testimony of Mr. Lyons' friends and family members, as well as defense sentencing comparisons — evidence that was not presented by prior

7

counsel.[7]  (*See* ECF:108 at 9-10.)  Without this mitigating information, it is premature to suggest that the Court should stack any remaining misdemeanor sentences.

The government's stacking argument is particularly unjust in light of its position in *Jorge Riley*.  The government was foreclosed from making such an argument in *Riley* because it *bargained away* all of Mr. Riley's misdemeanor charges in order to obtain Mr. Riley's waiver of his direct appeal and collateral review rights.[8]  The government thus effectively awarded Mr. Riley in the release-pending-§ 2255 context for going back on his bargain, but seeks to use the misdemeanors as a cudgel against Mr. Lyons, who retained those charges for the express purposes of preserving his right to appeal.  Both men should be treated similarly in the context of release.

6. Ignoring his other grounds for relief, the government opposition includes a merits response to only Mr. Lyons' failure-to-file IAC claim.  While — as explained above — the Court need not reach Mr. Lyons' failure-to-file claim in this context, as it is only one of *several* substantial questions that warrant his immediate release, Mr. Lyons nevertheless wishes to preliminarily respond here, as the government's merits response is once again based on either a fundamental misreading or purposeful obfuscation of his § 2255 motion to vacate.

According to the government, Mr. Lyons claims "that he did not comprehend that his attorney had just represented to the court [after its pronouncement of sentence] that the defendant had changed his mind about pursuing an appeal."  (ECF:113 at 4 (presumably referencing Mr. Lyons' supplemental motion, ECF:108 at 6 n.5, 11).)  But that is not what Mr. Lyons' motion

---

[7] With little effort, undersigned counsel has obtained family and community letters on Mr. Lyons' behalf.

[8] This same offer was extended to Mr. Lyons.  (*See* ECF:98 at 5 (citing 4/7/23:9-10).)  Though not relevant to Mr. Lyons' case, undersigned counsel notes that it is unlikely that such collateral review waivers are constitutional.

says.  In reference to former counsel's statement at sentencing, Mr. Lyons' motion clearly states: "Mr. Lyons denies *hearing* this statement (and denies its substance), as he was emotionally overwhelmed after hearing the Court's pronouncement of sentence and was unable to focus on what he understood/perceived to be the rote discussion of administrative matters post-sentencing." (ECF:108 at 6 n.5 (emphasis added); *see also id.* at 11 ("Prior counsel's oddly placed and perplexing statement at sentencing — which Mr. Lyons strongly maintains he did not *hear* given that he was trying to process the 51-month sentence he had just received after his attorney had requested a split sentence of 10 months, *see supra* note 5 — does not change this analysis." (emphasis added).)  The difference between failing to comprehend and failing to hear is material, and this Court should not accept the government's sleight of hand.

In any event, the government's cold suggestion that Mr. Lyons' explanation "strains credulity" (ECF:113 at 4) could only be articulated by someone who has never stood next to a criminal defendant at sentencing, spoken to them afterward, and/or stood in their or their family's shoes.  Clients — including Mr. Lyons — routinely report to attorneys throughout the Federal Public Defender's Office that once their incarceratory sentence is pronounced — even if it is what they expected, but especially so if it is substantially more — they experience any number of overwhelming sensations at once:  lightheadedness, blacking out, near (or actual) fainting, severe nausea, dizziness, heart palpitations, buckling of the legs, room spinning, inability to catch one's breath, hot flashes, skin tingling, "out-of-body" feeling, deep sadness, fear, and/or panic.  Indeed, what strains credulity is the suggestion that a father of two who had never been to prison before would be able to hear and/or grasp *anything* after being told that he would be spending the next four plus years of his life in federal prison.  This is not to imply *in*

*any way* that Mr. Lyons is a victim here; it is meant only to convey that the government knows not of what it speaks.

It is beyond common for criminal defendants to have no understanding of the sentence that was just imposed or, after hearing the sentence imposed, completely miss everything that follows.  This is *precisely* why competent criminal defense counsel discuss with the client their right to appeal *after* the sentencing hearing is over and would never state on the record at sentencing (to no particular end or sentencing benefit to the client) that the client has decided not to appeal when the client has *14 days* within which to make that decision.  *See* Fed. R. App. P. 4(b)(1)(A).  Expecting a criminal defendant to make a decision about appealing *before* hearing the sentence and discussing it with counsel — again, *that* is what strains credulity here.  As Mr. Lyons' motion sets forth, he conveyed to Mr. Levin in both words and actions his intent to appeal — doing otherwise would be nonsensical in this case, and any attorney advice to the contrary would be constitutionally deficient.[9]

7.	Finally, undersigned counsel wishes to address the timing of Mr. Lyons' supplemental motion for release.  Without acknowledging the truth of the context set forth in footnote 1 of Mr. Lyons' supplemental motion,[10] the government appears to fault undersigned

---

[9] Undersigned counsel notes that even if a client suggests to counsel before sentencing that he may not wish to appeal — which Mr. Lyons strongly denies doing in this case — under the unique circumstances here, where *Fischer* was on the horizon and Mr. Lyons had declined the government's plea offer for the express purpose of preserving his appellate rights, it would have hurt no one for Mr. Levin to file a prophylactic notice of appeal, which could have been voluntarily dismissed at a later time had Mr. Lyons decided to do so after consulting with competent counsel.  This is common practice in cases that do not involve an appeal waiver (as well as some that do), as it gives defendants and counsel time to look at the case with fresh eyes — especially in cases where there may have been ineffective assistance that trial counsel is conflicted in identifying.  It is undoubtedly what should have been done in this case.

[10] For ease of reference, footnote 1 of Mr. Lyons' supplemental motion for release states:

10

counsel for filing Mr. Lyons' supplemental motion "one day before the government's response was due"/"late on the evening of July 25, 2024" (ECF:113 at 2, 6), implying perhaps that it did not have enough time to consider and respond to Mr. Lyons' counseled arguments for release *or* know what they would be beforehand.[11]  Mr. Lyons herein adds to footnote 1 the following context:

    a.    Undersigned counsel did not perceive that the agreed-upon July 12, 2024 deadline for filing Mr. Lyons' supplemental motion to vacate also applied to any supplementation of his motion for release and thus did not purposefully or negligently spring the supplemental motion on the government.  This should have been evident to the government in light of:

    (1) the text of the parties' joint proposed scheduling order, which set July 12th as the due date for "Petitioner-Defendant's Supplemental Motion" (ECF:107 at 2) after the parties' discussion of the one-year statute of limitations that applies to § 2255 motions to vacate[12] (but does not apply to motions for release);

---

> Undersigned counsel stated the intention to supplement Mr. Lyons' pro se motion for release in her supplemental motion to vacate (*see* ECF:108 at 5 n.4) and, on July 12, 2024 [at 12:04 AM], separately communicated that intention to the government immediately after it filed its response in *Riley* in an effort to ascertain the government's position on Mr. Lyons' request.  A near final draft of this supplement was sent to the government at 1:16 pm on July 25, 2024, in an effort to obtain the government's final position.  Understanding (and empathizing) that the government is dealing with many issues/cases post-*Fischer*, counsel brings this to the Court's attention only to convey that the intent to supplement Mr. Lyons' motion and the general bases for release were known and/or communicated to the government in advance of the instant filing and thus additional time to file its response with the Court, if requested, is unwarranted.

(ECF:110 at 2 n.1.)

[11] Although the government did seek an extension of time to respond to Mr. Lyons' motion to vacate (ECF:112), it chose to respond to Mr. Lyons' motion for release on July 26th.

[12] *See United States v. Ingram*, 908 F. Supp. 2d 1, 4 (D.D.C. 2012) ("Where, as here, a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the

11

(2) Mr. Lyons' supplemental motion to vacate, filed July 12th, which states: "Undersigned counsel intends to supplement Mr. Lyons' motion for release in the coming days." (ECF:108 at 5 n.4);

(3) undersigned counsel's email to government counsel at 12:04 am on July 12th — the night before Mr. Lyons' supplemental motion to vacate was due — requesting that the government act consistent with its position in *Jorge Riley*; noting, *inter alia*, that "Riley's substantive claims are based on *Fischer* and *Brock*, as will be the case for Mr. Lyons *beyond his IAC claims*" (emphasis added); informing government counsel of undersigned counsel's "inten[t] to supplement and restyle [Mr. Lyons' motion for release pending appeal] as a motion for release pending consideration of his 2255 (similar to Mr. Riley's)"; and explaining that undersigned counsel had planned to wait for the Court's decision in *Riley*, "but in light of the government's position in Mr. Riley's case, I'd like to file for Mr. Lyons soon.";

(4) undersigned counsel's July 18th email response to the government's request for Mr. Lyons' sentencing transcript, which reminded the government that "[a]s the supplement indicates, I'll also be supplementing Mr. Lyons['] motion for release.";

(5) undersigned counsel's July 24th email response to the government's request for extension of time, wherein counsel stated, *inter alia*, "I will still be supplementing [Mr. Lyons' motion for release] with the government's position in *Riley*, etc." and "If you could let me know if the government will agree not to oppose [] release as it did in *Riley*, then we can go from there." — to which the government never responded; and

---

expiration of the period in which the defendant could have appealed to the court of appeals." (internal quotation marks omitted)).

(6) as referenced in ECF:110 at 2 n.1, undersigned counsel's follow-up email to government counsel at 1:16 pm on April 25th, to which counsel attached a near final version of Mr. Lyons' supplemental motion for release and indicated to the government that she was waiting for the government's position before filing. Having received no response from the government as of 9:40 pm that evening, counsel filed Mr. Lyons' motion for the Court's review.

b. Even without the above context, however, the primary bases for Mr. Lyons' supplemental motion for release were set forth on July 12th in the supplemental § 2255 motion itself. Not only had the government affirmatively agreed to respond to that motion within two weeks of its filing (ECF:107), the government has been responding to release motions legally similar to Mr. Lyons' since the Supreme Court's grant of certiorari in *Fischer* in December 2023 and the D.C. Circuit's decision in *Brock* in March 2024. Moreover, the government is/was the opposing party in *Fischer*, *Brock*, and *Griffin*, thus any suggestion that the timing of Mr. Lyons' supplemental motion for release left the government ill-prepared to respond to the substance of those cases should be looked upon with skepticism.

c. Finally, and most importantly, it bears repeating (repeatedly) that the government responded to a nearly identical (though weaker) request for release pending the resolution of a January 6th-related § 2255 motion on July 11, 2024, in the *Jorge Riley* case, No. 21-cr-69-APM, before Judge Mehta. The Court in *Riley* ordered the government to respond to Mr. Riley's motion for release — which was filed simultaneously with his underlying § 2255 motion — within *three days* of its filing. See *Riley*, No. 21-cr-69-APM, Minute Order (July 9, 2024). Because the legal analysis with respect to the substantial and exceptional nature of the questions presented in Mr. Riley's § 2255 petition is identical with respect to two of the claims raised in Mr. Lyons' petition (*Fischer* and *Brock*), the government should have had no trouble simply

13

importing that analysis — i.e., its implicit concession that such claims (even given the procedural hurdles, including but not limited to *a collateral review waiver*, that exist in Mr. Riley's case, but not Mr. Lyons') meet the heightened standard for release in the § 2255 context — into its response to Mr. Lyons' motion for release.  Instead, as discussed above, the government chose to take the opposite and inconsistent position before this Court.

\*     \*     \*

Given the extraordinary nature of the many legal developments since Mr. Lyons' conviction and sentencing, as well as the time he has already served, Mr. Lyons once again respectfully requests that he be allowed to return to his family pending the resolution of his § 2255 motion, so he can immediately begin supporting his ex-wife and two sons,[13] who have been struggling both financially and emotionally in his absence.

## CONCLUSION

WHEREFORE, for all of the above reasons, as well as those stated in his April 18, 2024 pro se motion and July 25, 2024 supplemental motion for release, Mr. Lyons respectfully moves for release pending the resolution of his § 2255 motion to vacate.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
ROSANNA M. TAORMINA
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500

---

[13] In Mr. Lyons' Supplemental Motion for Release, counsel mistakenly stated that Mr. Lyons had four sons.  Counsel apologizes for any confusion this may have caused.