## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. 21-00079 |
| v. |  |
| KEVIN JAMES LYONS, | Judge Beryl A. Howell |
| Defendant. |  |

## <u>MEMORANDUM OPINION</u>

As a result of his criminal conduct at the United States Capitol on January 6, 2021, defendant Kevin James Lyons was convicted, on April 7, 2023, after a stipulated trial, of one felony obstruction offense, under 18 U.S.C. §§ 1512(c)(2) and 2, two Class A misdemeanor offenses, and three Class B misdemeanor offenses.  He was thereafter sentenced to concurrent terms of 51 months' imprisonment on his felony conviction, 12 months' imprisonment on his two Class A misdemeanor convictions, and six months on his three Class B misdemeanor convictions. Defendant filed no appeal and self-surrendered on August 29, 2023, to the custody of the U.S. Bureau of Prisons ("BOP") to serve his sentence and has remained incarcerated since that time. While the Supreme Court considered the appeal in *Fischer v. United States*, 603 U.S. --, 144 S. Ct. 2176 (2024), challenging application of the obstruction statute to offense conduct at the U.S. Capitol on January 6, 2021, defendant filed, on April 18, 2024, a *pro se* petition, pursuant to 28 U.S.C. § 2255, to vacate his sentence, *see* Def.'s Mot. Vacate J. Under 28 U.S.C. § 2255 ("Def.'s Mot. Vacate J."), ECF No. 98, as well as *pro se* motions for release pending appeal and for appointment of new counsel, *see* Def.'s Mot. Release Pending Appeal ("Def.'s Mot."), ECF No. 100; Def.'s Mot. Appoint New Counsel, ECF No. 99.  Following issuance of the Supreme Court's

decision in *Fischer*, the Federal Public Defender, who was newly appointed to represent defendant, supplemented the original *pro se* motions.

Now pending before the Court is defendant's original *pro se* motion for release, as supplemented and restyled by counsel as a motion for release pending resolution of his § 2255 Motion, Def.'s Suppl. Mot. Release ("Def.'s Suppl. Mot."), ECF No. 110, which the government opposes, Gov't's Opp'n Def.'s Mot. Release Pending Appeal ("Gov't's Opp'n"), ECF No. 113.[1] For the reasons stated below, defendant's motion for release pending consideration of his § 2255 Motion will be GRANTED, but only upon completion of defendant's one-year term of imprisonment on his two convictions for Class A misdemeanors.

## I.    BACKGROUND

Following a stipulated bench trial, defendant was convicted, on April 7, 2023, of a single felony offense for Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count Six), and the following five misdemeanor offenses: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count One); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Two); Entering and Remaining in Certain Rooms in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C) (Count Three); Disorderly Conduct at the Grounds and in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five).  Judgment at 1–2, ECF No. 94.  These convictions are based on the offense conduct briefly summarized as follows: defendant drove from Illinois to Washington, D.C.

---

[1]    Defendant's *pro se* Motion to Vacate Judgment Under 28 U.S.C. § 2255 ("Def.'s Mot. Vacate J."), ECF No. 98, as supplemented by defendant's counseled Supplemental Motion to Vacate Judgment Under § 2255 ("Def.'s Suppl. Mot. Vacate J."), ECF No. 108, remains pending.

to attend the former President's "Stop the Steal" rally, after posting on Instagram on January 5, 2021, that "I'm heading to DC to STOP THE STEAL!"  Statement Facts Stipulated Trial ("SOF") ¶ 8, ECF No. 79.  On January 6, 2021, defendant attended the rally, as planned, and then joined a crowd walking to the U.S. Capitol, where he encountered tear gas and flash bangs, prompting him to comment, "I love the smell of teargas in the mid-afternoon." *Id.* ¶¶ 10–13.  Undeterred by these police actions, defendant stated his intent, "We're storming the Capitol building," despite acknowledging that "I guess we're all going to jail." *Id.* ¶ 13.  As defendant climbed the steps outside the Capitol building to the Senate Wing doors, he commented, "This is our house and we're taking our house back," and "This is a fucking revolution." *Id.* ¶¶ 13–14.  As defendant got closer to the Senate Wing doors, he yelled at nearby police officers, "Oath breakers!" "Fucking Nazi bastards!" "Traitors!" and "SS!," *id.* ¶ 15, before entering the Capitol through the Senate Wing doors at around 2:16 PM, *id.* ¶ 16.

Inside the Capitol building, defendant made his way to the office of then-Speaker of the House Nancy Pelosi, *id.* ¶ 19, while joining other rioters calling out her name and defendant yelling "Nancy, where are you?," *id.* ¶ 17.  Inside the Speaker's office, defendant stole a wallet from a coat hanging in the office, *id.* ¶ 22, and a framed photograph of Pelosi and former Rep. John Lewis and took both stolen items with him when he left the Capitol, *id.* ¶ 23.  He then brazenly texted a picture of the photograph, stating he was now a felon and "I took this off Pelosi's fucking desk!" *Id.*  After leaving the Capitol in an Uber, defendant even posed for a photo in which he held up the framed photograph that he had taken from Speaker Pelosi's office.  *Id.*

At defendant's sentencing hearing on July 14, 2023, defendant's applicable advisory guidelines sentencing range was determined to be 41 to 51 months' imprisonment, Sentencing Tr., at 22:12–13, July 14, 2023, ECF No. 97, based on a finding that defendant was in Criminal History

Category I and had a total offense level of 22, *id.* at 22:10-11.   Specifically, as to the felony obstruction charge in Count Six, U.S.S.G § 2J1.2(a) applied with a base offense level of 14.  *Id.* at 21:18–21.   Over defendant's objection, three offense levels were added, pursuant to § 2J1.2(b)(2), "because the offense resulted in the substantial interference with the administration of justice, specifically the Joint Session of Congress," *id.* at 21:22–22:1, and another eight levels were added, pursuant to § 2J1.2(b)(1)(B), because "the offense caused or threatened to cause physical injury to a person or property damage," *id.* at 22:1–4, resulting in a total offense level of 25, *id.* at 22:4–5.[2] This total was reduced by three offense levels to account for defendant's acceptance of responsibility, as reflected by his agreement to proceed with a stipulated trial, under U.S.S.G. §§ 3E1.1(a) and (b).  *Id.* at 22:5–9.   Counts One, Two, and Six were grouped together, resulting in a total offense level of 22, *id.* at 21:12–17, which, combined with a criminal history category of I, resulted in an advisory sentencing range of 41 to 51 months' imprisonment, *id.* at 22:10–13.   This advisory sentencing range exceeded the statutory maximum for the Class A misdemeanors charged in Counts One and Two, such that the range for those two counts was 12 months' incarceration. *See* U.S.S.G. § 5G1.2 Note 3(B) ("[W]here a statutorily authorized maximum sentence on a particular count is less than the minimum of the applicable guideline range, the sentence imposed

---

[2]       Defendant objected to the application of the three-level enhancement pursuant to § 2J1.2(b)(2), Def.'s Sentencing Mem. at 2, ECF No. 88, and the eight-level enhancement pursuant to § 2J1.2(b)(1)(B), *see* Sentencing Tr. at 9:12–13, 14:1–9.  Approximately eight months after defendant's sentencing, the D.C. Circuit concluded that the three-level administration of justice enhancement in § 2J1.2(b)(2) "does not apply to interference with the legislative process of certifying electoral votes," concluding that "administration of justice" only applies to "judicial, quasi-judicial, and adjunct investigative proceedings." *United States v. Brock*, 94 F.4th 39, 42, 51 (D.C. Cir. 2024).  While not explicitly addressing the eight-level enhancement in § 2J1.2(b)(1)(B), the same logic expressed in *Brock* applies to this specific offense characteristic, as this enhancement applies to "causing or threatening to cause physical injury to a person, or property damage, *in order to obstruct the administration of justice.*"  U.S.S.G. § 2J1.2(b)(1)(B) (emphasis supplied).  Had defendant been sentenced without the two enhancements found to be inapplicable in *Brock*, his total offense level would have been 11, which in combination with a Criminal History Category I, would have produced an advisory guidelines range for defendant of 8 to 14 months' incarceration.

on that count shall not be greater than the statutorily authorized maximum sentence on that count.").[3]

Defendant was sentenced to serve concurrent terms, on Count Six, of 51 months' imprisonment, at the high end of the applicable sentencing range; on Counts One and Two, of the statutory maximum of 12 months' imprisonment; and on Counts Three, Four, and Five, of six months' imprisonment. Sentencing Tr. at 46:13–17. This sentence was followed by concurrent terms of supervised release: on Count Six, of 36 months, and on Counts One and Two, of 12 months. *Id.* at 46:18–23.

Defendant, who had complied with his pretrial release conditions from his arrest on January 13, 2021, through his trial, requested permission to self-surrender to BOP, which request was granted. *Id.* at 50:18–51:2, 52:6–7, 11–13. He timely self-surrendered, without incident, to FCI Milan in Michigan, on August 29, 2023. Def.'s Suppl. Mot. ¶ 7.

Despite declining to enter a guilty plea on the terms offered in the government's plea offer, which contained waivers of appeal and collateral attack on both his convictions and sentence, and thereby preserving his appellate rights by proceeding via stipulated bench trial, and objecting to application of specific offense characteristics under the Guidelines Manual at the time of sentencing, defendant, through his retained trial counsel, filed no notice of appeal challenging his convictions or sentence. *Id.* ¶ 6.[4]

---

[3]      The sentencing guidelines are inapplicable to Counts Three, Four, and Five, which are Class B misdemeanors carrying a maximum sentence of six months' imprisonment. *See* U.S.S.G. § 1B1.9; 40 U.S.C. § 5109(b).

[4]      Prompted by defendant's filing, on April 18, 2024, of his multi-pronged *pro se* request to vacate his conviction pursuant to §2255, Def.'s Mot. Vacate J., for release pending appeal, Def.'s Mot., and for appointment of new counsel, defendant's trial counsel was directed to clarify whether he continued to represent defendant and intended "to supplement defendant's *pro se* filings, and including an explanation for his failure to file a notice of appeal," Min. Order, Apr. 19, 2024. Defendant's trial counsel responded that, "defendant did not instruct [trial counsel] to file a notice of appeal," Def.'s Counsel's Notice Withdrawal at 1, ECF No. 103, and pointed to counsel's statement at sentencing that defendant "has indicated to me that he does not wish to appeal anything relative to the Court in this particular matter, including sentence," Def.'s Counsel's Suppl. Response Order Ct. at 1,

With newly appointed counsel, defendant seeks both vacatur of his felony obstruction conviction and correction of his sentence, under 28 U.S.C. § 2255, *see* Def.'s Mot. Vacate J.; Def.'s Suppl. Mot.; *supra* n.1, and release pending resolution of his § 2255 motion on the grounds that success on his § 2255 motion "would likely result in a reduced imprisonment sentence that would expire before the Court is able to resolve his underlying motion," Def.'s Suppl. Mot. at 1. With the filing of the government's opposition, *see* Gov't's Opp'n, and defendant's reply, *see* Def.'s Reply Supp. Def.'s Mot. Release ("Def.'s Reply"), ECF No. 117, defendant's motion for release pending resolution of his § 2255 motion is ripe for resolution.

## II.   LEGAL STANDARD

In a proceeding filed under § 2255, courts have the "inherent power" to order the release of a criminal defendant "pending determination of the merits" of his § 2255 claim. *United States v. Kelly*, 790 F.2d 130, 139 (D.C. Cir. 1986) (quoting *Baker v. Sard*, 420 F.2d 1342, 1343 (D.C. Cir. 1969)). Such requests are "ordinarily . . . measured against a heightened standard requiring a showing of exceptional circumstances." *Id.* (quoting *Baker*, 420 F.2d at 1343) (omission in original); *see also Aronson v. May*, 85 S. Ct. 3, 5 (1964) (holding that an incarcerated person seeking bail pending a collateral attack must meet a "greater showing of special reasons" and that, "in addition to there being substantial questions presented by the appeal, there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice"). This standard has been interpreted as a two-pronged test, assessing whether (1) the underlying § 2255 petition raises a substantial question of law, and (2) the motion for release

---

ECF No. 104 (quoting Sentencing Tr. at 51:24–52:1). On July 26, 2024, the government sought an order confirming a limited waiver of attorney-client privilege to allow defendant's trial counsel to "freely discuss his representation relating to" defendant's ineffective assistance of counsel claim, Gov't's Mot. Order Confirming Ltd. Waiver Att'y-Client Privilege at 1, ECF No. 111, which was granted over defendant's opposition, Min. Order, Aug. 9, 2024; *see* Def.'s Resp. Gov't's Mot. Order Confirming Ltd. Waiver Att'y-Client Privilege ¶ 2, ECF No. 116.
.

pending resolution of the § 2255 claim is based on "exceptional" circumstances deserving special treatment. *See, e.g.*, *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990); *United States v. Dade*, 959 F.3d 1136, 1138 (9th Cir. 2020) (holding that the "requisite showing" for release pending appeal of a denial of a § 2255 motion requires showing "special circumstances or a high probability of success" and "exceptional circumstances" (quoting *United States v. Mett*, 41 F.3d 1281, 1282 (9th Cir. 1995))); *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001) (explaining that to meet the "difficult" standard for bail pending habeas litigation a petitioner "must demonstrate that the habeas petition raises substantial claims and that extraordinary circumstances exist . . . ." (quoting *Grune v. Coughlin*, 913 F.2d 41, 44 (2d Cir. 1990))) (cleaned up).[5]

Notably, the "Bail Reform Act does not apply to convicted defendants seeking postconviction relief," *Kelly*, 790 F.2d at 139 (citing *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985)), and motions for release pending resolution of a § 2255 petition are "measured against a heightened standard" when compared to motions for release pending appeal, under the Bail Reform Act provision codified at 18 U.S.C. § 3143, *Baker*, 420 F.2d at 1343; *see also Cherek*, 767 F.2d at 337–38 (finding that, although § 3143(b)(1) is "inapplicable" to motions for release pending resolution of a § 2255 motion, because § 3143(b) provides a "more favorable standard," a defendant who cannot satisfy § 3143(b)(1) could not satisfy the more exacting requirements for release pending § 2255). Nevertheless, the D.C. Circuit's definition of a substantial question in § 3143(b)(1)(B) as "a close question or one that very well could be decided the other way," *United States v. Perholtz*, 836 F.2d 554, 555–56 (D.C. Cir. 1987), provides useful guidance in the § 2255 context.

---

[5]     Other Judges on this Court have applied this two-pronged test in evaluating motions for release pending resolution of a § 2255 motion. *See United States v. Stottlemyer*, No. 21-cr-334-2 (TJK), 2024 WL 1076852, at *3 (D.D.C. Mar. 8, 2024) (applying this standard to a motion for release pending resolution of a § 2255 petition); *Meskel v. United States*, No. CRIM.A. 04-0053 (RMU), 2005 WL 1903375, at *2 (D.D.C. July 13, 2005) (same).

## III.    DISCUSSION

Defendant argues that he fully satisfies the conditions for release pending either a direct appeal under 18 U.S.C. § 3143(b)(1), or resolution of his § 2255 Motion, though he recognizes that "the standards are not identical."  Def.'s Suppl. Mot. at 1, 7–8; Def.'s Reply at 1–2.  The government counters that defendant has failed to raise a substantial question of law in his § 2255 motion and, even were such a question present, the circumstances in this case are not sufficiently exceptional to warrant release.  *See* Gov't's Opp'n at 3–7.  The government's position is not persuasive given the new binding precedent that has evolved since defendant's sentencing in this case, combined with defendant's ineffective assistance of counsel claim.

### A.  Substantial Question of Law

The government presses two arguments in urging that defendant fails to show a substantial question of law exists.  First, the government contends that defendant's § 2255 motion advances only an ineffective assistance of counsel ("IAC") claim and, from this premise, reasons that the substantial question of law must relate to that claim and renders "irrelevant" any arguments under *Fischer* and *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024).  Gov't's Opp'n at 4.  Second, the government argues that defendant's IAC claim does not present a substantial question.  *Id.*  The reasoning in both arguments is flawed.

#### 1.  Defendant's *Fischer* and *Brock* Claims Establish a Substantial Question of Law as to His § 2255 Petition

The government characterizes defendant's § 2255 motion as raising only the argument "that defendant was denied effective assistance of counsel."  *Id.*  Not so.  Defendant also argues that he is "actually innocent" of the felony conviction under the Supreme Court's construction of § 1512(c)(2) in *Fischer*, Def.'s Suppl. Mot. Vacate J. Under 28 U.S.C. § 2255 ("Def.'s Suppl. Mot. Vacate J.") at 9, ECF No. 108, and, further, that the two sentencing enhancements applied in

determining the final advisory sentencing range in his case have now been deemed inapplicable under *Brock*, *id.* at 8; *see also* Def.'s Reply at 3.  Neither argument addresses the alleged ineffectiveness of defendant's trial counsel nor otherwise relates to his IAC claim.  Each claim for relief is separate and distinct.  As a result, defendant may show a substantial question of law exists as to any of the three claims he has raised.[6]

Other judges on this Court, as well as the undersigned, have previously concluded that the question of whether a felony obstruction conviction for offense conduct arising from the attack on the U.S. Capitol on January 6, 2021, falls within the law's "ambit" was a substantial question where the appealing defendant was "convicted of a single felony Section 1512(c)(2) charge, and any other convictions for only misdemeanor charges, when the defendant had already served close to or more than twelve months in prison."  *United States v. Roche*, No. 22-cr-86 (BAH), 2024 WL 1328459, at *3 (D.D.C. Mar. 28, 2024);  *see also, e.g.*, *United States v. Sheppard*, No. 21-cr-203 (JDB), 2024 WL 127016, at *3 (D.D.C. Jan. 11, 2024); *United States v. Weyer*, No. 22-cr-40 (JEB), 2024 WL 809962, at *3 (D.D.C. Feb. 27, 2024); *United States v. Adams*, No. 21-cr-354 (APM), 2024 WL 111802, at *2 (D.D.C. Jan. 10, 2024).  Those decisions were issued while *Fischer* was pending before the Supreme Court.  Defendant meets that description.  He was convicted of a single § 1512(c)(2) felony, has only other misdemeanor convictions, and has served almost 12 months in prison.  This description raised a sufficiently substantial question of law before the *Fischer* decision was issued and certainly does after the *Fischer* decision, where the Supreme Court "decline[d] to adopt the Government's interpretation" of the obstruction statute, *Fischer*,

---

[6]     Defendant also argues that a possible D.C. Circuit decision in *United States v. Griffin*, No. 22-3042 (argued Dec. 4, 2023), could provide additional grounds for the requested relief, *see* Def.'s Suppl., ECF No. 109; Def.'s Suppl. Mot. at 6; Def.'s Reply at 3, but consideration of this possibility is premature, particularly given that the claims based on *Fischer*, *Brock*, and ineffective assistance of counsel are sufficient to resolve the pending motion for release.

144 S. Ct. at 2190, by narrowing the scope of the statutory provision defendant was convicted of violating.

The government has already effectively recognized as much.  In *United States v. Riley*, 21-cr-69 (APM) (D.D.C.), the government did not oppose the defendant's motion for release pending resolution of his § 2255 claim.  *See Riley*, Gov't's Resp. Order Ct. at 1, ECF No. 73.  Although the government argued in *Riley* that its decision not to oppose release in that case was limited to the "narrow circumstances" present there, *id.*, certainly the government would have lodged an opposition if the legal standard for release had not been met.  Indeed, as defendant highlights, "[w]hile the government went to great pains in *Riley* to stress that its position with respect to release was not meant to concede the merits of any of the substantive arguments in Mr. Riley's motion to vacate, by not opposing his release, the government did concede that the legal standard for release was met."  Def.'s Reply at 5.  Moreover, the only two arguments made for release in *Riley* were "obvious innocence" post-*Fischer* and an "over-long sentence" post-*Brock.  Riley*, 21-cr-69 (APM), Mot. Release Custody at 3–4, ECF No. 72.  These are the same arguments asserted by defendant here.  *See* Def.'s Suppl. Mot. at 1; Def.'s Reply at 3.  Nothing in the government's opposition explains why *Fischer* and *Brock* would satisfy the substantial question of law requirement in *Riley* but would fail to do so here.  In short, *Fischer,* particularly compounded by *Brock*, presents a substantial question of law that would have a significant impact in reducing the advisory sentencing range applicable to defendant and likewise possibly reduce the sentence imposed on defendant.

### 2.  Defendant's IAC Claim Presents a Substantial Question of Law

In addition to his claims for relief under *Fischer* and *Brock*, defendant also claims that his trial counsel's failure to appeal his conviction and sentence constituted ineffective assistance of

counsel.  *See* Def.'s Suppl. Mot at 5; Def.'s Reply at 8–10.  Without deciding the merits of defendant's claim that defendant's counsel was ineffective, defendant has shown his IAC claim is also sufficiently "close" to constitute a substantial question of law.

The Sixth Amendment guarantees criminal defendants the right to "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Counsel is deemed ineffective if the "representation fell below an objective standard of reasonableness" and that unreasonable performance prejudiced the defendant.  *Id.* at 688, 694.  Courts reviewing such claims "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 689–90.

A failure by counsel to file a notice of appeal, or consult with a defendant about filing an appeal, can constitute ineffective assistance of counsel.  In *Roe v. Flores-Ortega*, 528 U.S. 470, 479–80 (2000), the Supreme Court held that when a defendant has not given counsel clear instructions about whether to appeal, counsel must "consult with the defendant about an appeal" if there is reason to believe "(1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."

Here, a serious question is presented as to whether defendant gave his trial counsel clear instructions not to file an appeal.  Trial counsel stated at the sentencing hearing that defendant had expressed his wish not to appeal, Sentencing Tr. at 51:24–52:1, but defendant "denies [the] substance" of the statement and denies hearing his then-counsel's representation, Def.'s Reply at 9 (quoting Def.'s Suppl. Mot. Vacate J. at 6 n.5).  In addition, defendant made clear choices during the criminal proceedings that consistently demonstrated his desire to appeal.  He filed a motion to dismiss the § 1512(c)(2) charge to "preserve the issue on appeal."  Def.'s Suppl. Mot. Vacate J. ¶

2 (quoting Def.'s Mot. Dismiss Count Six Indictment at 2 n.2, ECF No. 64).  He "rejected a government plea offer to the § 1512(c)(2) charge alone." *Id.* ¶ 4.  He agreed to a stipulated trial, in part, to "preserve the defendant's appeal rights with respect to the 18 U.S.C. § 1512(c)(2) charge," *id.* ¶ 3 (quoting Joint Status Report Regarding Stipulated Trial & Joint Mot. Regarding Trial Deadlines at 1, ECF No. 63); *see also* Stipulated Trial Tr. at 12:21–25, 22:25–23:4, Apr. 7, 2023, ECF No. 96, an intent reiterated in his sentencing memorandum, *id.* ¶ 5.  He objected to the application of multiple sentencing enhancements.  *See* Def.'s Sentencing Mem. at 2, ECF No. 88; Sentencing Tr. at 9:12–13, 14:1–9.

All these actions are significant under *Flores-Ortega* when considering whether defendant's ineffective assistance of counsel claim raises a significant legal issue.  *Flores-Ortega* directs courts to consider whether the defendant pled guilty as a "highly relevant factor" in determining "whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal," because "a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." 528 U.S. at 480.  Even when a defendant enters a guilty plea, courts may consider the extent of any appeal waivers the defendant understood resulted from the terms of any agreement with the government to so plead.  *See id.*  Here, defendant did not enter a guilty plea but rather consistently sought to preserve issues on appeal and avoid any actions that would waive his appeal right.  His actions did not show that he sought "an end to judicial proceedings" but rather the opposite: the ability to appeal.  While open questions remain about what, if any, instructions defendant gave to his trial counsel about filing any appeal, his actions demonstrate a clear, consistent desire to appeal the obstruction conviction and sentence imposed.

The government argues the decisions in *Stottlemyer*, 2024 WL 1076852, and *United States v. Young*, 249 F. Supp. 3d 11 (D.D.C. 2015), demonstrate that defendant's IAC claim does not raise a substantial question of law.   *See* Gov't's Opp'n at 5.   Yet, both cases are so easily distinguishable they undermine rather than help the government's position.

In *Stottlemyer*, for example, a defendant, who was convicted of offense conduct on January 6, 2021, at the U.S. Capitol building, sought release pending resolution of her § 2255 claim to attend her mother-in-law's funeral, but this motion was denied because she had accepted a plea agreement that "specifically waived the right to appeal her conviction 'on any basis.'"  2024 WL 1076852, at *1–*3.   Before accepting the plea, the court had "explained the waiver of her appeal rights to her" and confirmed she understood.   *Id.* at *3.   Additionally, the defendant neither challenged the validity of the waivers she made and executed as part of her plea nor alleged that her counsel at the time of her plea was ineffective.   *Id.*   In contrast, here, defendant did not enter a guilty plea, had no plea agreement with the government, and did not agree to waive his right to appeal or sign such a waiver.   Even if trial counsel's statement at sentencing were considered some sort of waiver, the Court engaged in no colloquy, as would have been required under Federal Rule of Criminal Procedure 1 for waiver of appellate and collateral attack rights before accepting a guilty plea, to ensure defendant knew about and understood such a waiver.   Finally, defendant here is alleging his counsel was ineffective in failing to appeal.

Likewise, *Young* provides no help for the government's position.   In *Young*, the defendant's motion for release pending resolution of his § 2255 motion was denied because "at least half" of the legal challenges articulated in his motion had previously been raised and rejected on direct appeal, 249 F. Supp. 3d at 13, and, as to the other half, the defendant "offer[ed] no explanation about how the result of the proceedings would have been different but for counsel's actions," *id.*

These are simply not the circumstances in the instant case, where defendant raised no issues on direct appeal and his situation would be very different had such an appeal been filed by his trial counsel.

Defendant does not have to prove that his IAC claim is likely to succeed to show that it raises a substantial legal question; he must simply show this claim raises a "close" question. *Perholtz*, 836 F.2d at 556. On the present record, considering defendant's denial of the substance of trial counsel's statement at sentencing about defendant's instruction not to file an appeal, and representation that he did not hear counsel's statement, combined with defendant's consistent actions to preserve both his right to appeal and issues for an appeal, a sufficiently "close" IAC claim is presented to qualify as a substantial question of law.

## B. Exceptional Circumstances

The government next argues that defendant has failed to show any extraordinary circumstances exist, citing such qualifying circumstances to be "serious deterioration of the petitioner's health while incarcerated, short sentences for relatively minor crimes so near completion that extraordinary action is essential to make collateral review truly effective, and extraordinary delay in processing a habeas petition." Gov't Opp'n at 7 (quoting *United States v. Roberts*, 250 F.3d 744, 2001 WL 274571, at *1 (5th Cir. 2001)). Since none of those examples "apply here," the government urges a finding of no extraordinary circumstances to justify defendant's release. *Id.* Insofar as the government seems to argue that the Fifth Circuit's *Roberts* examples describe the universe of circumstances qualifying as "exceptional," this Court is not persuaded.

Indeed, the government's position in *Riley*, 21-cr-69 (APM), demonstrates that other circumstances have been considered exceptional. Defendant points out that by choosing not to

oppose release in *Riley,* the government at least implicitly conceded that the legal standard for release was met in that case.  *See* Def.'s Reply at 5.  None of the *Roberts* examples—serious deterioration of health while in custody, the risk of ineffective collateral review, or extraordinary delay, *Roberts,* 2001 WL 274571, at *1—were present in *Riley*, but nonetheless release was granted in that case without government opposition.  This result suggests, then, that circumstances other than the three examples provided by the government may meet the level of "exceptional."

The stark circumstances existing here are, first, that a recent Supreme Court decision makes highly questionable whether defendant's offense conduct qualifies as felony obstruction, under § 1512(c)(2), rendering his actual innocence claim a substantial one, and, second, that a recent D.C. Circuit decision leaves no doubt that his advisory sentencing range determined by the Court was "over-long," raising another substantial question whether the sentence imposed was also "over-long."  This new binding precedent could have been applied on direct appeal, but for the third circumstance: that defendant's trial counsel did not file an appeal, raising a substantial claim for ineffective assistance of counsel.  Set against these three substantial claims requiring review and consideration on his § 2255 petition is the fact that defendant is nearing the end of his 12-month sentence for his two Class A misdemeanor convictions and, absent release, may spend additional time in incarceration for conduct that in many cases the government no longer considers a violation of the obstruction statute.  *See* Def.'s Reply at 5–6 (noting that the government has been dismissing § 1512(c)(2) charges pre- and post-trial).

This Court sees no basis for treating the circumstances in *Riley* as exceptional but failing to do so in the instant case.  As already detailed, the defendant in *Riley* challenged in his § 2255 petition, the same felony obstruction conviction and on the same basis of the decisions in *Fischer* and *Brock,* as defendant here.  In fact, as defendant highlights, the differences in the two cases

make the claims advanced by defendant here *more* exceptional and worthy of action than those of the defendant in *Riley,* Def.'s Suppl. Mot. at 10, since the *Riley* defendant pled guilty, agreeing to a plea deal that waived his right both to appeal and collaterally attack his conviction and sentence, *id.* (citing *Riley*, 21-cr-69 (APM), Plea Agreement at 7–8, ECF No. 53).  The *Riley* defendant also never claimed ineffective assistance of counsel nor challenged the validity of the waivers of his right to direct appeal or collateral attack.  *Id.* at 11.  In contrast, defendant in the instant case rejected the government's offer to plead guilty pursuant to a plea agreement that contained written waivers of such appeal rights, but instead explicitly sought to preserve his appeal rights by proceeding with a stipulated trial.  *See* Def.'s Suppl. Mot. Vacate J. ¶¶ 3-5.  In this respect, defendant here has fewer hurdles to overcome than did the *Riley* defendant.  *See* Def.'s Suppl. Mot. at 11.

Defendant has convincingly shown that his case presents the same, if not more, exceptional circumstances than the government accepted in *Riley*.  The government has certainly not shown any reasons why the circumstances raised in this case should be considered any less exceptional. As a result, defendant has shown sufficient exceptional circumstances to justify his release pending resolution of his § 2255 motion.

### C. Timing of Release

Defendant argues that, if his motion is granted, he would "likely be eligible for immediate release."  Def.'s Suppl. Mot. at 10; Def.'s Reply at 6.  To reach this conclusion, defendant relies on earned time credits available under the First Step Act of 2018 ("FSA earned time credits"). Def.'s Suppl. Mot. at 12; Def.'s Reply at 6–7.  *See also* Def.'s Reply, Att. 1, Lyons, Kevin James Inmate Data ("Def.'s FSA Information").[7]  This argument is rejected for at least two reasons, and

---

[7]     Defendant, correctly, makes no argument that good time credit ("GTC") would permit such immediate release since only "a prisoner who is serving a term of imprisonment of more than 1 year" is eligible for a reduction

defendant's release pending resolution of his § 2255 motion is authorized on August 28, 2024, the date when he has served his concurrent sentences of 12 months of imprisonment on his two Class A misdemeanor convictions.

First, defendant has not met the statutory requirements to have his accrued FSA earned time credits applied for an early transfer to supervised release.  FSA credits may be earned by eligible federal prisoners to qualify for early release from incarceration in the amount of "10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."  18 U.S.C. § 3632(d)(4)(A)(i).[8]  Such FSA credits may be increased by prisoners, who are "determined by the Bureau of Prisons to be at a minimum or low risk for recidivating," and who can earn an additional "5 days of time credits for every 30 days of successful participation" in such programming or activities.   18 U.S.C. § 3632(d)(4)(A)(ii). Importantly, for any accrued credits to "be applied toward time in prerelease custody or supervised release," the prisoner must first be found by BOP to be eligible "under section 3624(g)." 18 U.S.C. § 3632(d)(4)(C) ("The Director of the Bureau of Prisons shall transfer *eligible prisoners, as*

---

[8]   Prisoners are ineligible to earn FSA credits if they are "serving a sentence for a conviction" under one of almost seventy statutory provisions listed in 18 U.S.C. § 3632(d)(4)(D), or subject to removal under immigration laws, *id*. § 3632(d)(4)(E), but defendant is not disqualified due to these provisions and, indeed, his FSA eligibility status is listed as "ELIGIBLE," Def.'s FSA Information.

defendant's release pending resolution of his § 2255 motion is authorized on August 28, 2024, the date when he has served his concurrent sentences of 12 months of imprisonment on his two Class A misdemeanor convictions.

First, defendant has not met the statutory requirements to have his accrued FSA earned time credits applied for an early transfer to supervised release.  FSA credits may be earned by eligible federal prisoners to qualify for early release from incarceration in the amount of "10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."  18 U.S.C. § 3632(d)(4)(A)(i).[8]  Such FSA credits may be increased by prisoners, who are "determined by the Bureau of Prisons to be at a minimum or low risk for recidivating," and who can earn an additional "5 days of time credits for every 30 days of successful participation" in such programming or activities.   18 U.S.C. § 3632(d)(4)(A)(ii). Importantly, for any accrued credits to "be applied toward time in prerelease custody or supervised release," the prisoner must first be found by BOP to be eligible "under section 3624(g)." 18 U.S.C. § 3632(d)(4)(C) ("The Director of the Bureau of Prisons shall transfer *eligible prisoners, as*

---

in a term of incarceration due to such credits, 18 U.S.C. § 3624(b)(1), and defendant's imposed 12-month terms of imprisonment on his Class A misdemeanors render him ineligible yet for accrual of GTC, *see, e.g.*, *Andrews v. Dobbs*, 848 F. App'x 568, 569 (4th Cir. 2021) (per curiam) (concluding defendant "is not entitled to good-time credits on his revocation sentence because the district court sentenced him to 12 months' imprisonment" and "[u]nder § 3624(b)(1), a prisoner is only entitled to good-time credit if he is 'serving a term of imprisonment of more than 1 year'" (quoting 18 U.S.C. § 3624(b)(1)); *see also United States v. Weitzel*, No. 23-3100, 2024 WL 2290309, at *1 (8th Cir. May 21, 2024) (rejecting challenges to the "adequacy of the district court's explanation" of the one-year prison sentence imposed, concluding the district court "did not need to specifically address [defendant's] request for one day more, even if a slightly longer sentence would have given him an opportunity to earn good-time credits" (citations omitted)); *United States v. Caldwell*, 802 F. App'x 81, 83–84 (3d Cir. 2020) (rejecting a challenge to the substantive reasonableness of a sentence, finding "a sentence of 12 months is [not] unreasonable in comparison to a sentence of 10 months, which [defendant] effectively would have served, assuming good behavior, had he been sentenced to 12 months and a day").

[8]   Prisoners are ineligible to earn FSA credits if they are "serving a sentence for a conviction" under one of almost seventy statutory provisions listed in 18 U.S.C. § 3632(d)(4)(D), or subject to removal under immigration laws, *id*. § 3632(d)(4)(E), but defendant is not disqualified due to these provisions and, indeed, his FSA eligibility status is listed as "ELIGIBLE," Def.'s FSA Information.

*determined under section 3624(g),* into prerelease custody or supervised release." (emphasis supplied)).

Several requirements are set out "under section 3624(g)" for FSA earned time credits to be applied for early transfer by BOP of a prisoner into supervised release, as defendant has requested in the instant case. *See* Def.'s Reply at 5–7. First, the prisoner must show that he has "earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). Second, he must show, through BOP's recidivism risk assessment system, established by § 18 U.S.C. § 3632(a), "a demonstrated recidivism risk reduction or [that he] has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment." 18 U.S.C. § 3624(g)(1)(B). Finally, he must have "had the remainder of the prisoner's imposed term of imprisonment computed under applicable law," *id.* § (g)(1)(C), and "been determined under the [risk assessment system] to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner," *id.* § (g)(1)(D)(ii). If these enumerated requirements are met, BOP may apply a prisoner's FSA earned time credits for an early transfer to supervised release "[i]f the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment," but this FSA earned time credit reduction of incarceration time is capped at one year, since any early transfer is "not to exceed 12 months." *Id.* § (g)(3) (authorizing the BOP Director to "transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.").

In this case, defendant has not shown he has complied with the § 3624(g) requirements. The plain text of § 3624(g) conditions the application of FSA time credits earned under § 3632(d)(4) for early transfer to supervised release on BOP's determinations under a recidivism

risk assessment system.  *See* 18 U.S.C. §§ 3624(g)(1)(B), (D)(ii).  No information about BOP's recidivism risk assessment results for defendant has been submitted or made part of the record before the Court.  Thus, defendant essentially asks this Court to supplant BOP's designated role to make this risk assessment—or otherwise bypass this statutory requirement—and directly apply the FSA earned time credits to reduce defendant's period of incarceration and transfer him to supervised release early, at least for the period pending resolution of his § 2255 motion.  The statute does not provide courts with this authority, *see generally id.* § 3624(g), and such judicial supplanting of BOP's authority does not appear to have been Congress's intention regarding application of FSA earned time credits, *see* 164 Cong. Rec. S7745-01, 7747 (Statement of Sen. Cornyn) ("[I]f you are not a low-risk offender, as determined by the testing that is done by the Bureau of Prisons, you will not be eligible for these less confining conditions.  This . . . determination . . . *is left to experienced law enforcement officers and wardens who work with these individuals on a daily basis*." (emphasis supplied)).  The authority to determine a prisoner's recidivism risk level is left to the BOP.  Finding a "minimum or low recidivism risk" is a necessary predicate to applying FSA accrued time credits for early transfer of a prisoner to supervised release.  That requirement has not been satisfied in the instant case.

Other courts have read this risk assessment requirement of § 3624(g) similarly.  In *Stepp v. Thompson*, No. 22-cv-964, 2022 WL 16748607, at *1–*2 (M.D. Pa. Nov. 7, 2022), the court denied a habeas petition from a prisoner seeking to have his FSA time credits applied "regardless of his recidivism risk level," because "application of time credits—that is, creating and implementing an earlier release date based on credits earned—cannot occur until the prisoner has been determined to be a minimum or low recidivism risk," *id.* at *2.  In other words, despite earning FSA time credits, those credits could not be applied to reduce his sentence until the BOP

recidivism risk system requirements were met. *Id.* Similarly, in *Camara v. Warden, FCI-Allenwood*, No. 23-cv-504, 2023 WL 4867417 (M.D. Pa. July 31, 2023), the court held that "[f]or early transfer to supervised release, § 3624(g) requires that the inmate 'has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.'" *Id.* at *2 (quoting 18 U.S.C. § 3624(g)). While in both cases BOP had determined the prisoners had higher-than-acceptable recidivism risk levels, *see Stepp*, 2022 WL 16748607, at *2; *Camara*, 2023 WL 4867417, at *1, whereas the instant defendant's BOP assessed recidivism risk level is merely unknown, the principle is the same: accrued FSA earned time credits cannot be applied without the required BOP determination of recidivism risk level.[9]

Second, defendant is not eligible to apply his FSA time credits for early supervised release because he still has an existing prison sentence with more than 12 months' incarceration left to serve. Defendant was sentenced to 51 months' incarceration on July 14, 2023, Sentencing Tr. at 46:13–17, and began serving his sentence on August 29, 2023, Def.'s Suppl. Mot. ¶ 7. Although defendant has successfully argued for his release pending resolution of his § 2255 motion, his sentence remains in place, at least until such resolution and the vacatur he seeks of his felony obstruction conviction. *See Kelly*, 790 F.2d at 139 (recognizing that release pending resolution of a § 2255 motion is "pending determination of the merits" of the § 2255 claim). Should defendant's § 2255 motion be denied, he will be ordered remanded to BOP's custody to serve the remainder of his sentence. *See, e.g.*, *United States v. Bledsoe*, No. 21-cr-204 (BAH), 2024 WL 341159, at *6 (D.D.C. Jan. 30, 2024) (holding that the defendant's release pending appeal "may be revoked"

---

[9]     This reasoning is also consistent with the ruling of another Judge on this Court, who found that, for a release pending direct appeal under 18 U.S.C. § 3143(b)(1), the statute does not allow courts to consider "anticipated decisions by the Bureau of Prisons" regarding application of early release credits. Min. Order, *United States v. Clark*, No. 21-cr-538 (DLF) (D.D.C. July 26, 2024). Here, because the defendant has not shown that the required BOP finding exists, any decision to apply his accrued time credits would necessarily "anticipate" such a decision by the BOP, and such an anticipatory ruling is not permissible under § 3624(g), as Judge Friedrich's persuasive analysis of § 3143(b)(1) held in *Clark*.

depending on the result of the *Fischer* decision); *United States v. Madeoy*, No. 86-cr-0377 (HHG), 1991 WL 148553, at *1 (D.D.C. July 15, 1991) (noting that the government had moved to revoke the defendant's release pending appeal).

As the D.C. Circuit has held, supervised release is "release by the Bureau of Prisons to the supervision of a probation officer for a term of supervision *following expiration* of a sentence's term of imprisonment." *United States v. Davis*, 711 F.3d 174, 176 (D.C. Cir. 2013) (citing 18 U.S.C. §§ 3624(a), (e)) (emphasis in original). Using FSA earned time credits, a prisoner may be transferred to supervised release up to 12 months earlier than they would have otherwise been eligible. 18 U.S.C. § 3624(g)(3). Defendant here, however, has more than two years to serve on his still-existing sentence. *See* Def.'s FSA Information. Therefore, defendant may not apply his accrued FSA time credits.

This result is consistent with other decisions of other Judges on this Court, including the undersigned, ordering the release, under 18 U.S.C. § 3143(b)(1), of defendants challenging their felony obstruction convictions under § 1512(c) only upon completion of their "likely reduced sentence," imposed for misdemeanor convictions, of twelve months. *See, e.g.*, *United States v. Seefried*, No. 21-cr-287 (TNM), 2024 WL 1299371, at *1, *6 (D.D.C. Mar. 26, 2024) (noting defendant was "convicted of a felony and four misdemeanors" and ordering his release "one year to the day after he surrendered to the custody of the Attorney General"); *Roche*, 2024 WL 1328459, at *1, *5 (authorizing the release of a defendant convicted of one felony and five misdemeanors "at the expiration of a term of incarceration on his two convictions for Class A misdemeanors"); *United States v. Bender*, No. 21-cr-508 (BAH), 2024 WL 960999, at *6 (D.D.C. Mar. 6, 2024) (ordering the release of two defendants convicted of one felony and five misdemeanors each "when they have served twelve months in prison"); *Bledsoe*, 2024 WL 341159, at *1, *2, *6 (granting the

release of a defendant convicted of one felony and four misdemeanors who had already served 14 months incarceration—more than the statutory maximum authorized for his Class A misdemeanor convictions).

Therefore, defendant will be released, pending resolution of his § 2255 petition, at the expiration of his 12-month sentence for his two Class A misdemeanor convictions, on August 28, 2024. *See* Govt's' Opp'n at 5.

## IV.   CONCLUSION

For the reasons set forth above, defendant's Motion for Release, ECF No. 100, is **GRANTED**, but only prospectively, effective August 28, 2024.  An order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: August 22, 2024

_____
**BERYL A. HOWELL**
United States District Judge