# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 21-00079 (BAH) |
| | ) | |
| KEVIN JAMES LYONS | ) | |
| | ) | |
| Petitioner-Defendant | ) | |

**DEFENSE'S RESPONSE TO THE COURT'S NOVEMBER 26, 2024 MINUTE ORDER AND REQUEST TO VACATE DECEMBER 12, 2024 EVIDENTIARY HEARING**

Petitioner-Defendant Kevin James Lyons, through undersigned counsel, respectfully submits this response to the Court's November 26, 2024 Minute Order "DIRECTING the parties, by December 5, 2024, to submit supplemental briefing as to defendant's pending [98] Motion to Vacate his conviction under 28 U.S.C. § 2255, addressing how the Court's analysis in *United States v. DeCarlo*, No. 21-cr-73, 2024 WL 4650993 (D.D.C. Nov. 1, 2024) (granting defendants' Section 2255 motion, despite failure to file direct appeal and notwithstanding appeal and collateral attack waivers in defendants' plea agreements, upon finding defendants actually innocent of their convictions for violating 18 U.S.C. § 1512(c)(2) after the Supreme Court's decision in *Fischer v. United States*, 603 U.S. 480 (2024)), should or should not apply in this case, regardless of whether defendant here was afforded ineffective assistance of counsel." The defense submits that the Court's analysis in *DeCarlo* supports — indeed compels — the granting of Mr. Lyons' stand-alone *Fischer* claim, effectively mooting his ineffective assistance claims and, as a result, any need for the evidentiary hearing currently scheduled for December 12, 2024.[1]

---

[1] Mr. Lyons notes that his *Griffin*-based ineffectiveness claims are still not ripe for review, as (1) Mr. Griffin is currently seeking rehearing in the Court of Appeals; and (2) certain issues raised in *Griffin* were not decided by the Circuit and may be addressed in, *inter alia*, *United States v.*

**Application of This Court's Analysis in *DeCarlo***

A.   *DeCarlo*

As the Court's Minute Order explains, in *United v. DeCarlo*, No. 21-cr-73, 2024 WL 4650993 (D.D.C. Nov. 1, 2024) — a prosecution involving the events of January 6, 2021 — this Court granted the defendants' motion to vacate under 28 U.S.C. § 2255, despite the defendants' failure to file direct appeals and notwithstanding the appeal and collateral attack waivers in their plea agreements, upon finding defendants actually innocent of their convictions for violating 18 U.S.C. § 1512(c)(2) after the Supreme Court's decision in *Fischer v. United States*, 603 U.S. 480 (2024). The stand-alone *Fischer* claim was the sole ground for relief raised by the *DeCarlo* defendants in their motion to vacate. The Court found that claim sufficient to grant the relief Mr. Lyons ultimately seeks here: the vacatur of his conviction under § 1512(c)(2).

After detailing the offense conduct, procedural history, applicable legal standards, and the parties' arguments, the Court in *DeCarlo* began its analysis by addressing the government's argument that the defendants had procedural defaulted their *Fischer*-based claims by failing to raise them on appeal.[2] *DeCarlo*, at *7-*15. Concluding that the defendants could not show cause for their procedural default — indeed, they had "not contest[ed] this point," *id.* at *8 — the Court moved to the defendants' claims of actual innocence, as such claims, if successful, would provide an alternative means of overcoming default. Because the *DeCarlo* defendants' § 1512(c)(2) convictions were the product of plea agreements with the government, the Court's

---

*Ballenger & Price*, Nos. 23-3198, 23-3199, still pending in the Circuit. Because Mr. Lyons' *Griffin*-based ineffective assistance claims are legal in nature, it is unlikely that an evidentiary hearing would be needed to resolve them once ripe.

[2] At the risk of repeating facts and law of which this Court is undoubtedly aware having authored *DeCarlo*, Mr. Lyons summarizes the Court's opinion here as a basis for his later analysis.

actual innocence analysis addressed the defendants' § 1512(c)(2) convictions as well as the question of whether the government had forgone equal or more serious charges as part of the parties' plea negotiations. *See id.* at *9 (recognizing that "[w]here equal or more serious charges against defendants were forgone by the government as part of the plea bargain, defendants must also make the same [actual innocence] showing on the forgone charges"). Finding that there was insufficient record evidence that additional charges were forgone, *id.* at *10, only the defendants' § 1512(c)(2) convictions remained for review.

Despite recognizing the seriousness of the defendants' conduct, the Court nevertheless found that the government's theory of continued guilt under § 1512(c)(2) — that the defendants (1) caused or (2) attempted to cause the electoral ballots to be removed from the Senate or House Chamber, impairing their availability to Congress to conduct the official proceeding, *id.* at *11 — "fail[ed] to grapple fully with 'the limited reach' imposed by the Supreme Court's *Fischer* decision." *Id.* at *10 (citing *Fischer*, 144 S. Ct. at 2181). After parsing the Supreme Court's analysis in *Fischer*, this Court explained that the success of the government's first theory of criminal liability under § 1512(c)(2) rests on "whether engaging in conduct causing the halting of the proceeding and the concomitant removal of the ballots to a more secure location amounts to impairing the availability or integrity of the ballots themselves." *Id.* at *12. "On this factual record," the Court concluded, "the answer is no." *Id.* The Court reasoned, *inter alia*, that:

> [W]hile defendants and the other rioters certainly prevented the immediate ability of Congress to use the ballots in the official proceeding as intended, they did so by stopping the official proceeding itself, not by "impair[ing]" the ballots' "integrity or availability for use in an official proceeding."[3] 18 U.S.C.

---

[3] *See also id.* at 12 ("While the disruption to Congress caused by the rioters, including defendants, was severe, the electoral ballots remained intact, unaltered, unimpaired, and within the control of the appropriate congressional personnel to ensure their availability for use when the official proceedings could safely resume.")

> § 1512(c)(1); *Fischer*, 144 S. Ct. at 2185.  The government's theory of obstruction—that by forcing Congress's official proceeding to be halted, defendants prevented the use of the ballots as intended to certify the Electoral College vote—is the exact interpretation rejected by the Supreme Court in *Fischer*.

*Id.* at *13.

With respect to the second theory of criminal liability — attempt — the Court again found that no evidence had been presented on which a properly instructed, reasonable juror could find that defendants had violated § 1512(c)(2).  Concluding that the requisite criminal intent for attempt under § 1512(c)(2) is "a specific intent to commit the unlawful act," "not simply the general intent to do the immediate act" or "mere knowledge that a result is substantially certain to follow from one's actions," *id.* at *13 (internal quotation marks omitted), the Court's review of the record uncovered no qualifying evidence.  The government had presented "no specific evidence indicating these defendants were looking for or would even recognize an electoral ballot"[4]; "[t]o the contrary, the record amply show[ed] defendants' intent to stop Members of Congress from proceeding with the certification, but Members are not evidence to be used in the proceeding, as required for Section 1512(c)(2) to apply."  *Id.* at *14; *see also id.* ("No matter how chilling [defendants'] statements may be, given the obvious concerns they raise about the safety of Members of Congress on January 6, 2021, they demonstrate only that defendants were focused on stopping Members of Congress and the proceeding to certify the Electoral College vote, which falls short of showing any specific intent by defendants to 'impair the availability or integrity' of the electoral ballots themselves[.]" (quoting *Fischer*, 144 S. Ct. at 2186)).  Finding no evidence of "defendants' specific intent to impair the availability of documents, records, or

---

[4] The government had not alleged that the defendants impaired, or attempted to impair, the availability of any "records, documents, or objects" or "other things" of evidentiary value "used in an official proceeding" other than the electoral ballots. *DeCarlo*, at *11.

4

other things to be used in the certification proceeding" as *Fischer* requires, the Court concluded that "defendants have demonstrated their actual innocence of their Section 1512(c)(2) convictions," overcoming their procedural default. *Id.* at *15.

The Court's analysis did not end there, however. Because the defendants' plea agreements contained identical waivers of the right to challenge their convictions via 28 U.S.C. § 2255 ("collateral attack waivers"), the government argued that the waivers barred judicial review of the defendants' claims. After a thorough discussion of the legal issues presented by such waivers — bypassed here, as unrelated to Mr. Lyons' case — the Court found that while the waivers were in fact valid, "due to the D.C. Circuit's exception for 'miscarriage of justice' to vitiate waivers of appellate rights in plea agreements, defendants' claims raised in the Section 2255 motion may be considered." *Id.* at *15-*21. Thus, having overcome both procedural default and their collateral attack waivers through a showing of actual innocence, the Court concluded — on the merits —that defendants had "demonstrated that their conviction for violating Section 1512(c)(2) resulted from a fundamental defect which inherently results in a complete miscarriage of justice, . . . and thus that they are entitled to have their convictions vacated." *Id.* at *21 (internal quotation marks and citations omitted).

**B.     Application**

The Court's analysis in *DeCarlo* compels relief in this case as well. Indeed, this case is even more straightforward than *DeCarlo* in two key respects. Mr. Lyons' conviction was the result of a stipulated trial, not a plea agreement with the government, thus (1) there is no need for the Court to address whether additional charges were foregone as a result of plea negotiations;

5

and (2) there are no plea waivers that would purport to bar judicial review.[5] *DeCarlo* is thus more similar to *United States v. Riley*, 21-cr-69 (APM) (D.D.C.), a January 6th-related § 2255 case — discussed by both the defense and the Court in the context of Mr. Lyons' motion-for-release litigation (*see, e.g.*, ECF:110 at 2, 7, 10-11; ECF:117 at 1, 4-5; ECF:121 at 10, 14-16) — involving a defendant who had pled guilty to one count of violating 18 U.S.C. § 1512(c)(2) pursuant to a written plea agreement with the government in which he waived both his appellate and collateral review rights.[6] As this Court recognized in granting Mr. Lyons' release pending the review of his § 2255 motion, the differences between Mr. Lyons' case and Mr. Riley's "make the claims advanced by defendant here *more* exceptional and worthy of action than those of the defendant in *Riley* . . . since the *Riley* defendant pled guilty, agreeing to a plea deal that waived his right both to appeal and collaterally attack his conviction and sentence." (ECF:121 at 16 (emphasis in original) (internal citations omitted).) "In this respect," wrote the Court, "defendant here has fewer hurdles to overcome than did the *Riley* defendant." (ECF:121 at 16.)

Thus, without a plea agreement and its attendant negotiations and waivers, the Court need

---

[5] Beyond stating additional substantive claims in his § 2255 motion (IAC, *Brock*, *Griffin*), Mr. Lyons' § 2255 motion differs from that of the *DeCarlo* defendants in several other respects, none of which affect the application of *DeCarlo* to this case. These include: (1) Mr. Lyons, unlike the *DeCarlo* defendants, did argue cause and prejudice in relation to the procedural default of his *Fischer*-based claim (ECF:119 at 10-11); and (2) Mr. Lyons preserved several non-*Fischer*-based challenges to his § 1512(c)(2) conviction (ECF:108 at 2, 8; ECF:119 at 12). As Mr. Lyons has argued previously, because Mr. Lyons' actual innocence claim is dispositive in his favor, there is no need for the Court to address either issue in order to grant him full relief. (*See, e.g.*, ECF:119 at 10 (Mr. Lyons asserting in reply that "[b]ecause Mr. Lyons is actually innocent of violating section 1512(c)(2), there is no need for the Court to address the government's remaining arguments with respect to procedural default"); ECF:119 at 12 (recognizing that the Court has rejected Mr. Lyons' non-*Fischer*-based arguments in the context of his motion to dismiss, but nevertheless preserving them in the event of a favorable ruling from the Circuit or Supreme Court).)

[6] The merits of Mr. Riley's § 2255 motion are still pending before Judge Mehta.

only apply Section III.A.2(b) of its *DeCarlo* analysis — *Actual Innocence of Section 1512(c)(2), Post*-Fischer — to resolves Mr. Lyons' § 2255 motion in his favor.

While the conduct alleged in *DeCarlo* differs in varying respects from the conduct alleged in this case, the cases are not *materially* different <u>as concerns *Fischer*</u>.[7] The government's theory of guilt in this case is less concrete than it was in *DeCarlo*, as it never clearly asserts what its theory is, but instead relies on vague statements like, "While he himself did not place his hands on the ballot certificates or similar objects, the totality of the evidence in this case favors a more complex understanding of the proceeding, as well as conduct that enhances that understanding, further illustrating his intent."[8] (ECF:118 at 26.) Parsing the government's response to Mr. Lyons' motion to vacate, however, it appears that the government relies here on some of the very same theories of guilt squarely rejected by this Court in *DeCarlo* and the Supreme Court in *Fischer*. Mr. Lyons addresses them in turn:

- **Electoral Ballots:** As an initial matter, here, as in *DeCarlo*, "the government does not allege that defendant[] impaired, or attempted to impair, the availability of any 'records, documents or objects' or 'other things' of evidentiary value 'used in an official proceeding,' *Fischer*, 144 S. Ct. at 2186, other than the electoral ballots," *DeCarlo*, at *11. (ECF:118 at 27

---

[7] Though not relevant to the *Fischer* analysis, Mr. Lyons does note that, unlike the *DeCarlo* defendants, there is no suggestion that he committed assault.

[8] Should the government's theory of guilt in response to the Court's November 26th Minute Order differ from the theory of guilt expressed in its opposition to Mr. Lyons' motion to vacate (ECF:118 at 24-27), the defense would respectfully (1) move to strike any new theory/theories beyond those previously pled; or, in the alternative, (2) request the opportunity to respond to the government's new theory/theories of guilt if helpful to the Court. In any event, there is no theory of guilt, based on any/all available facts (*but see* ECF:119 at 6 n.5 (contesting the government's assertion that it may rely on facts outside the trial record)), that would support a § 1521(c)(2) conviction in this case.

("Lyons was trying to impair the availability of tangible objects, that being the ballots certifying the results of the 2020 election in the many states.")

- **Actual Impairing the Availability of the Electoral Ballots:** To the extent the government's theory in this case is actual impairment, this Court found *as fact* in *DeCarlo*: "While the disruption to Congress caused by the rioters, including defendants, was severe, the electoral ballots remained intact, unaltered, unimpaired, and within the control of the appropriate congressional personnel to ensure their availability for use when the official proceedings could safely resume." *Id.* at *12. In light of this finding, the government cannot show *actual* impairment of the electoral ballots in this case – or likely any other.

As discussed above, this Court in *DeCarlo* and the Supreme Court in *Fischer* rejected the government's actual impairment theory of obstruction — "that by forcing Congress's official proceeding to be halted, defendants prevented the use of the ballots as intended to certify the Electoral College vote." *Id.* at *13. *DeCarlo* explained: "[W]hile defendants and the other rioters certainly prevented the immediate ability of Congress to use the ballots in the official proceeding as intended, they did so by stopping the official proceeding itself, not by 'impair[ing]' the ballots' 'integrity or availability for use in an official proceeding.'" *Id.* at *13 (citing § 1512(c)(1) and *Fischer*, 144 S. Ct. at 2185). So too in this case. The government argues that Mr. Lyons intended to "stop the steal" and "understood the nature of *the proceedings* he was planning *to protest against* and attend" (ECF:118 at 24 (emphasis added)); led a crowd in a cheer of "Whose House? Our House?" before concluding "Let's take it!" (ECF:118 at 25); celebrated by chanting "stop the steal!" after learning that the joint session had entered an emergency recess and that rioters had "shut it down" because of their actions (ECF:118 at 25); "clearly understood the purpose behind *the certification proceeding*" (ECF:118 at 25 (emphasis

8

added)); "understood the consequences of his breach – that *his presence and leadership within the mob* would cause the interference with an actual document, record, or other thing related to the proceeding itself, and he thus intended to do so" (ECF:118 at 26 (emphasis added)); and demonstrated a desire to "stop or attempt to stop *the certification of* the actual votes" (ECF:118 at 26 (emphasis)). The government's theory of guilt in this case thus suffers from the same fatal flaw as in *DeCarlo*. As the Court recognized in that case, the government's construction of § 1512(c)(2), which focuses on efforts to "stop[] the official proceeding itself" and "on the fact that ballots could not be readily used to certify the election when certification proceedings were suspended due to the security threat the rioters posed broadens the range of obstructive conduct made illegal under [] Section 1512(c)(2) beyond the strict reading given in *Fischer*, which requires a 'focus on evidence impairment.'" *Id.* at *13 (quoting *Fischer*, 144 S. Ct. at 2185); *see also id.* at *11 (government's construction "fails to grapple fully with 'the limited reach' imposed by the Supreme Court's *Fischer* decision" (quoting *Fischer*, 144 S. Ct. at 2181)); *id* at *13 (government's theory of obstruction "is the exact interpretation rejected by the Supreme Court in *Fischer*). "Consequently," as in *DeCarlo*, "no properly instructed, reasonable juror could find [Mr. Lyons] guilty of violating Section 1512(c)(2) simply because [his] conduct was intended to stop—and succeeded in stopping, at least temporarily—the certification proceeding." *Id.* at *13.

- **Attempting to Impair the Availability of the Electoral Ballots:** The actual innocence analysis with respect to attempt in this case is also governed by *DeCarlo*. Here, as in *DeCarlo*, there is no evidence — record or otherwise[9] — that shows Mr. Lyons' "specific intent

---

[9] *See* ECF:119 at 6 n.5 (contesting the government's assertion that it may rely on facts outside the trial record, though noting that the resolution of the issue is not outcome determinative).

to impair the availability of" the electoral ballots "to be used in the certification proceeding." *Id.* at *15. The government "cites to no specific evidence indicating that [Mr. Lyons was] looking for or would even recognize an electoral ballot," and thus any suggestion that he was doing so on January 6th "appears somewhat speculative" and is thus "simply not enough to show the required intent for an attempted violation of Section 1512(c)(2)." *Id.* at *14.

Here, as in *DeCarlo*, the record arguably "shows defendant['s] intent to stop Members of Congress from proceeding with the certification." *Id.* at *14. The government highlights that Mr. Lyons "menacingly called out specific lawmakers" "in a manner that indicated that he knew precisely who they were and what their responsibilities were that day and that he knew that he needed to try and intimidate them as part of the mob if he wanted to achieve his riotous end." (ECF:118 at 25; *see also* ECF:118 at 27 (government arguing that Mr. Lyons set out on a course to "interfere with officials whom he believed to be responsible for the certification proceedings that day").) "[B]ut Members are not evidence to be used in the proceeding, as required for Section 1512(c)(2) to apply." *Id.* at *14; *see also id.* ("No matter how chilling [defendants'] statements may be, given the obvious concerns they raise about the safety of the Members of Congress on January 6, 2021, they demonstrate only that defendants were focused on stopping Members of Congress and the proceeding to certify the Electoral College vote, which falls short of showing any specific intent by defendants to 'impair the availability or integrity' of the electoral ballots themselves." (quoting *Fischer*, 144 S. Ct. at 2186)). Again, no evidence has been presented on which a properly instructed, reasonable juror could find that Mr. Lyons violated § 1512(c)(2), either by actually impairing the availability of documents, records, objects or other things of evidentiary value for use in the official proceeding in Congress or by attempting to do so. Mr. Lyons has thus demonstrated his actual innocence of his § 1512(c)(2)

10

conviction, justifying collateral relief under 28 U.S.C. § 2255.

*   *   *

In the context of his motions to vacate and for release, Mr. Lyons noted that the government had begun voluntarily dismissing § 1512 charges in pre-and post-trial cases indicted before the Supreme Court decided *Fischer*. (*See* ECF:117 at 5-6; ECF:119 at 8-9 (listing cases).) The list has only grown longer since August, now including cases that were then pending appeal. *See, e.g.*, *United States v. Mock*, No. 24-3027 (D.C. Cir.) (government agreeing to vacate § 1512 conviction and remand to district court for "further proceedings"); *United States v. Judd*, No. 23-3029 (D.C. Cir.) (government informed defense counsel that it will not be defending § 1512(c)(2) conviction on appeal); *United States v. Moynihan*, No. 23-3022 (D.C. Cir.) (same); *United States v. Smith*, No. 22-3076 (D.C. Cir.) (same). In light of these dismissals, in granting Mr. Lyons' motion for release, this Court acknowledged the possibility that Mr. Lyons "may spend additional time in incarceration for conduct that in many cases the government no longer considers a violation of the obstruction statute." (ECF:121 at 15.) The disparate treatment by the government of Mr. Lyons — whose conduct is not materially different *as concerns Fischer* than the defendants in the numerous cases in which it has voluntarily dismissed § 1512 charges — is unjust. As the Supreme Court recognized almost 90 years ago in *Berger v. United States*, 295 U.S. 78, 88 (1935): "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." Justice in this case demands the dismissal of Mr. Lyons' § 1512(c)(2) conviction, if not by the government, by this Honorable Court.

11

### *DeCarlo*'s Effect on Mr. Lyons' Ineffective Assistance of Counsel Claims

The defense has consistently argued that this Court can resolve Mr. Lyons' petition in his favor without the need for an IAC evidentiary hearing, as granting relief based on Mr. Lyons' stand-alone *Fischer*-based claim would be sufficient to dispose of nearly all of his remaining claims. (*See, e.g.*, ECF:119 at 1-2; ECF:123 at 2.) In light of the Court's analysis in *DeCarlo*, the defense's position is even more compelling, as judicial economy strongly favors resolving Mr. Lyons' petition on a legal basis already thoroughly considered and analyzed by this Court — a basis unavoidable in any event. Were this Court to *grant* relief based on Mr. Lyons' failure-to-file claim, Mr. Lyons would proceed with his appeal, in response to which the government would likely request — as it has in nearly every appeal involving a January 6th-related §1512 conviction — a remand for "further proceedings," which would lead the parties back to this Court to address the validity of Mr. Lyons' § 1512 conviction post-*Fischer* and compel relief pursuant to *DeCarlo*.[10] Were this Court to *reject* Mr. Lyons' failure-to-file IAC claim after an evidentiary hearing, post-hearing briefing, fact-finding, and legal analysis, Mr. Lyons' stand-alone *Fischer* claim would nevertheless remain, requiring this Court to address the validity of Mr. Lyons' § 1512 conviction post-*Fischer* and in light of *DeCarlo*. Thus, there are no circumstances under which this case does not boil down to the issues this Court has already addressed in *DeCarlo*, making next week's evidentiary hearing and analysis to follow an unnecessary expenditure of the Court's resources.

Accordingly, the defense respectfully requests that the Court vacate the currently

---

[10] This assumes the government continues to defend Mr. Lyons' § 1512 conviction post appeal, which would be at odds with the position it has taken in the vast majority of post-*Fischer* § 1512 proceedings where the government has affirmatively chosen not to defend the defendants' § 1512 convictions. *See supra* (listing cases).

scheduled December 12th evidentiary hearing until it has the opportunity to consider Mr. Lyons' stand-alone *Fischer*-based claim in light of *DeCarlo*. Should the Court ultimately grant relief as it did in *DeCarlo*, all currently ripe IAC claims will be mooted.

Respectfully submitted,

A.J. KRAMER
Federal Public Defender

_____/s/_____
Rosanna M. Taormina
Assistant Federal Public Defender

Michelle Peterson
First Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500
